UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN A.,
    Plaintiff,

v.

MARTIN O'MALLEY, *Commissioner,*
*Social Security Administration,*
    Defendant.

C.A. No. 24-cv-124-JJM-PAS

## ORDER

Before this Court are competing motions—Plaintiff Stephen A.'s Motion to Reverse the Decision of the Commissioner, and Defendant Commissioner Martin J. O'Malley's Motion to Affirm the Decision of the Commissioner. ECF Nos. 8 and 9. Stephen applied for Supplemental Security Income ("SSI") and Social Security Disability Insurance Benefits ("DIB") and was denied after the Administrative Law Judge ("ALJ") determined that he was not disabled. ECF No. 6-2 at 56.

Stephen appeals the ALJ's decisions on four grounds, focused on whether: (1) the substantial evidence did not support the ALJ's finding that his seizure disorder was not a medically determinable impairment ("MDI"); (2) the ALJ made fundamental errors applying the Commissioner's regulations; (3) the ALJ produced a residual functional capacity ("RFC") analysis inconsistent with her description of Stephen's impairments; and (4) the ALJ improperly determine whether Stephen's statements about his pain and symptoms were consistent with the record.

## I. BACKGROUND

Stephen is a 53-year-old who completed schooling through the 10th grade, and previously worked as a roofer. The ALJ found that he had several severe impairments, including lumbar degenerative disc diseases, prolonged QT syndrome with presyncope episodes, depressive disorder, anxiety related disorder, and substance addiction disorder. ECF No. 6-2 at 48.

In, 2023, Nurse Practitioner Allison Bean diagnosed Stephen with a seizure disorder—epilepsy—based on his "clinical presentation and history." ECF No. 6-10 at 946. Her diagnosis followed Stephen's report of increasingly frequent syncopal episodes, disorientation, trouble with word-finding, and spacing out. *Id.* at 944. He also detailed an instance in which he woke up disoriented, discovering that he urinated on himself, had dried blood on his nose and shirt, and had a sore tongue. *Id.* After her assessment, Nurse Bean ordered an EEG and MRI to assess Stephen's newly diagnosed seizure disorder, though it is unclear from the record whether those tests were performed. *Id.* at 946.

Ultimately, the ALJ determined at Step Two that Stephen's seizure disorder was not an MDI because the record did not include "any objective findings [t]o substantiate a diagnosis of epilepsy." ECF No. 6-2 at 48. The ALJ highlighted that Stephen scored a 28/30 on his mini mental status exam ("MMSE") and emphasized that the RFC accounted for Stephen's restrictions "related to presyncope episodes secondary to prolonged QT syndrome." *Id.*

2

The ALJ also found that Stephen could not perform his past work but concluded that he could perform other work such as a routing clerk, marker, and apparel stock checker. *Id.* at 54-55. On that basis, the ALJ determined that Stephen was not disabled from the application date of February 22, 2022, through the date of decision.

## II. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [their] conclusion." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citing *Consol. Edison Co.*, 305 U.S. at 229). If substantial evidence supports the Commissioner's decision, the Court should affirm it, "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). That said, the ALJ's findings are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). This Court also keeps in mind throughout its determination that the Social Security Act is a remedial statute meant to be broadly construed and liberally applied and

3

whose purpose is to mitigate the rigors of life for those who are disabled or impoverished. *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981); *Drovak v. Celebrezze*, 345 F.2d 894 (10th Cir. 1965).

## III. ANALYSIS

### A. Whether the ALJ Properly Determined that Stephen's Seizure Disorder was a Non-Medically Determinable Impairment.

Stephen asserts that the ALJ's finding that his seizure disorder was not an MDI was erroneous because the record did include objective findings that support his seizure diagnosis. ECF No. 8 at 12. To prove that objective findings existed, Stephen points to (1) his clinical interview with Nurse Bean, (2) Nurse Bean's determination that the 28/30 MMSE result showed potential mild cognitive impairment, and (3) the state agency consultant's medical file review note highlighting that a neurologist told Stephen to get an MRI and that there were "white opacities in the frontal lobe." *Id.* at 11-12.

The Commissioner contests that the ALJ's finding was proper because there was no record evidence that Stephen was diagnosed with seizure disorder "based on medically acceptable clinical and laboratory diagnostic techniques." ECF No. 9 at 5. Specifically, the Commissioner argues that (1) the MMSE Stephen cites to for support was not designed to diagnose seizure disorders but rather cognitive impairment, (2) white opacities in the frontal lobe do not establish a seizure disorder, and (3) the state agency consultants who referenced the MRI did not find a medically determinable impairment arising from seizures. *Id.* at 5-8.

4

The parties square their arguments on whether there was sufficient evidence to support Stephen's seizure diagnosis, yet the essential question appears to be whether the ALJ adequately developed the record related to that diagnosis.[1] While Stephen, as a benefits claimant, carries the burden to produce evidence and prove his impairment, 20 C.F.R. § 416.912, the ALJ has a duty to fully and fairly "develop an adequate record from which a reasonable conclusion can be drawn." *Ribeiro v. Barnhart*, 149 F. App'x 7, 8 (1st Cir. 2005) (quoting *Carrillo Marin v. Sec'y Health & Hum. Serv.*, 758 F.2d 14, 17 (1st Cir. 1985)). This duty follows the premise that Social Security disability determinations follow a model that is "investigatory, or inquisitorial, rather than adversarial." *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001) (citing *Sims v. Apfel*, 530 U.S. 103, 110 (2000)).

Accordingly, "the ALJ must recontact the treating doctor when the doctor's records . . . do not appear to be based on medically acceptable diagnostic techniques or appear incomplete." *Lopez-Lopez v. Colvin*, 138 F. Supp. 3d 96, 112 (D. Mass. 2016) (quoting *King v. Colvin*, 128 F. Supp. 3d 421, 436 (D. Mass. 2015)). The ALJ may seek "additional evidence or clarification from the source, telephon[e] the medical provider, or request[] copies of the records, a new report, or more detailed report." *Id.* (quoting *Gaeta v. Barnhart*, No. CIV.A. 06-10500-DPW, 2009 WL 2487862, at *5 (D. Mass. Aug. 13, 2009)). Additionally, the duty to develop the record

---

[1] Upon encountering errors that the plaintiff did not raise, this Court may raise such errors sua sponte. *Silva v. Colvin*, No. CA 14-301 S, 2015 WL 5023096, at *13 (D.R.I. Aug. 24, 2015) (citing *Choquette v. Astrue*, No. C.A. 08–384A, 2009 WL 2843334, at *10 n.2 (D.R.I. Aug. 31, 2009)).

5

may include ordering a consultative examination where the evidence is consistent but insufficient to determine whether the claimant is disabled. *See Tegan S. v. Saul*, 546 F. Supp. 3d 162, 170 (D.R.I. 2021) (citing 20 C.F.R. §§ 404.1512(b), 404.1520b(b)(2)).

Applying these legal principles to this case, the ALJ had options to address the insufficient objective evidence on Stephen's uncontroverted seizure disorder diagnosis, including (1) seeking more evidence or clarification from Nurse Bean regarding the diagnosis, or (2) sending Stephen to a consultive examination to perform the testing necessary to determine whether his seizure impairment can be substantiated. But the ALJ exercised neither option and took no other steps sanctioned under 20 C.F.R. § 404.1520b(b)(2) to try to resolve the insufficient evidence. The ALJ thus did not discharge her duty to adequately develop the record — an error requiring remand. *See Tegan S. v. Saul*, 546 F. Supp. 3d 162, 171 (D.R.I. 2021) (holding that remand was required because ALJ erred in not exercising duty to develop the record pursuant to 20 C.F.R. § 404.1520b(b)(2) when faced with insufficient evidence to decide whether claimant's fibromyalgia was an MDI).

### B.  Whether the Substantial Evidence Supports the ALJ's RFC Findings

Stephen raises several issues with the ALJ's RFC findings that essentially sets forth four broad inquiries as to whether the ALJ: (1) improperly found that Stephen's functioning was not significantly impaired, (2) erroneously applied outdated regulations, (3) improperly considered a statement on an issue reserved to the Commissioner as § 404.1520b(c)(3) prohibits, and (4) failed to identify a state agency

6

consultant's erroneous substance abuse analysis. The Court will address each issue in turn.

### a. Whether the ALJ Improperly Found that Stephen's Functioning was Not Significantly Impaired

Stephen asserts that the ALJ's finding that his functioning was not significantly impaired was incompatible with her findings that Stephen had five different severe impairments. ECF No. 8 at 18-19. The Commissioner argues that the ALJ's statement that Stephen's "functioning was not significantly impaired" was meant to serve as an introductory sentence to the paragraph describing Stephen's daily activities and was not meant as a term of art suggesting that Stephen neither had severe impairments nor functional limitations. ECF No. 9 at 11.

Essentially, a "severe impairment" is one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520c(c)(1)-(2). Considering that definition, it is understandable for Stephen to deduce that—standing alone—the ALJ's statement that his functioning was not significantly impaired conflicts with her determination that Stephen has five severe impairments. That said, as the Commissioner suggests, it does not appear that the ALJ's statement was meant to be a contradictory declaration that Stephen had no severe impairments at all. Rather, the ALJ's functionality statement is the opening sentence of a paragraph reciting Stephen's past reports about his abilities to perform daily activities. *See* ECF No. 6-2 at 53. The ALJ uses these reports to paint a larger picture about how the alleged intensity and severity of Stephen's symptoms deviate from the overall record evidence. *Id.* Thus, when evaluated in full context, the ALJ's

7

functionality sentence was not a conclusive finding but an opening sentence to the ALJ's continued analysis about the nature of Stephen's symptoms.

Stephen also argues the ALJ made an inconsistent credibility determination because she stated that Stephen's statements about his symptoms were "not entirely consistent with the medical evidence and other evidence in the record," yet she later stated that Stephen's "functioning was not significantly impaired"— a finding based exclusively on Stephen's lay statements reporting his daily activities. ECF No. 8 at 19. Stephen appears to suggest that in stating that his statements were "not entirely consistent," the ALJ essentially declared that his statements were "partially consistent," thus implying that some of his statements could be accepted. *Id.* Accordingly, Stephen asserts that the ALJ's finding that his "functionality was not significantly impaired" rejected *any* of Stephen's statements about his significant impairments, and thus contradicted the ALJ's finding that his statements were "partially consistent." *Id.*

This argument lacks traction because the purported inconsistent credibility determination arises from Stephen's strained interpretation of the meaning of "not entirely consistent." The ALJ used the words "not entirely consistent" to convey that Stephen's report of his symptoms were *inconsistent* with the evidence.[2] *See* ECF No 6-2 at 53. And as this Court explained above, her subsequent statement that Stephen's "functioning was not significantly impaired" was a part of a broader

---

[2] The ALJ explicitly concludes "[i]n sum, the alleged intensity and persistence of the claimant's symptoms are *inconsistent* with the overall evidence of record." ECF No 6-2 at 53 (emphasis added).

8

analysis highlighting how the alleged intensity and severity of Stephen's symptoms conflicted with the overall record. That analysis falls in line with the ALJ's conclusion about inconsistency. Thus, there are not reversible errors laden in the ALJ's credibility determination.

### b. Whether the ALJ Erroneously Applied Outdated Regulations

Stephen contends that the ALJ applied outdated regulations when considering opinion evidence. ECF No. 8 at 20-21. He points to the ALJ citing to 20 C.F.R. §§ 404.1527(c) and 416.927(c) after finding the state agency consultants' opinions persuasive. Stephen highlights that those regulations are titled "Evaluating opinion evidence for claims filed before March 27, 2017," but notes that his claims were filed in 2022, thus making those regulations inapplicable to his case. *Id.* at 21. The Commissioner concedes that the ALJ cited to outdated regulations in her discussion of the state agency consultants' findings but emphasizes that the ALJ's analysis followed the correct framework under the current regulations. ECF No. 9 at 12.

Ultimately, both parties do agree that the ALJ complied with the current regulations under 20 C.F.R. § 404.1520c, because she properly articulated that the consultants' opinions were persuasive based on the regulatory factors of supportability and consistency. *See* ECF No. 9 at 12; ECF No. 8 at 21. Thus, at first glance, it does not appear that the ALJ misapplied the law as to warrant remand, despite her erroneous citation.

However, Stephen asserts that supportability and consistency factors were also present in the old regulations, and so the ALJ's contemplation of such factors is

not conclusive evidence that she applied current regulations. ECF No. 8 at 21. Further, Stephen points out that treatment of certain evidence suggests the ALJ was relying on old regulations in her decision. *Id.* at 21-22. To support his argument, he cites the ALJ's implicit failure to regard Nurse Practitioner Allison Bean as an acceptable medical source[3] by not analyzing her medical opinion that (1) Stephen is suffering from seizures, (2) there is potential for mild cognitive impairments and (3) his poor sleep may be contributing to his overall memory concern. *Id.*

The Commissioner contends that the ALJ did not evaluate Nurse Bean's "opinion" under medical opinion regulations because it was not a medical opinion at all. ECF No. 9 at 12. Under 20 C.F.R. § 404.1513(a)(2), a medical opinion is a medical source's statement "about what [a claimant] can still do despite [their] impairment(s)" and whether a claimant has "impairment-related limitations or restrictions" in their ability to perform physical, mental, or other demands of work activity and adapt to environmental conditions. Per that definition, the Commissioner claims that Nurse Bean's assessment of Stephen did not offer any statements that would constitute a medical opinion. ECF No. 9 at 12.

A review of Nurse Bean's assessment of Stephen does reveal a lack of findings on any restrictions or limitation stemming from his seizure disorder. Nurse Bean did indicate a potential for MCI and suggest that Stephen's poor sleep may be contributing to his memory concern, but she does not attribute these affects to

---

[3] Under the old regulations, a nurse practitioner was not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c).

10

Stephen's seizure disorder. ECF 6-10 at 946. Further, after noting Stephen's poor sleep, Nurse Bean ordered a sleep study to assess for *sleep apnea*. *Id.* Thus, in the absence of any findings outlining limitations and restrictions related to Stephen's seizure disorder, it was appropriate for the ALJ to not regard Nurse Bean's assessment as a medical opinion under § 404.1513(a)(2).

### c. Whether the ALJ Improperly Considered a Statement on an Issue Reserved to the Commissioner as §404.1520b(c)(3) Prohibits

Next, Stephen argues that the ALJ erred in considering a statement on issues reserved to the Commissioner, as prohibited by 20 C.F.R. § 404.1520b(c), when she analyzed a treatment note from Dr. Shafiq Mamdani containing a statement that Stephen "works as a roofer performing strenuous activity without clear physical limitation." ECF No. 8 at 23-24. Stephen highlights that the ALJ improperly articulated her thoughts on whether Dr. Mamdani's statement was a medical opinion even though she could not consider the statement at all under § 404.1520b(c)(3). *Id.* at 24. Stephen appears to suggest that the ALJ's erroneous articulation of Dr. Mamdani's statement proves that she allowed the statement to influence her conclusion, especially because the statement echoes the ALJ's finding that Stephen's functioning "was not significantly impaired." *Id.* at 25. The Commissioner argues that the ALJ's analysis was not improper because she gave no undue weight to Dr. Mamdani's statement. ECF No. 9 at 13.

Statements on issues reserved to the Commission are treated as "inherently neither valuable or persuasive on the issue of whether [a claimant] is disabled" and the ALJ is instructed not to "provide any analysis on how [they] considered such

11

evidence in [their] determination or decision." § 404.1520b(c)(3). Here, the ALJ noted that Dr. Mamdani's statement did not "include a specific, detailed assessment of functional limitations," and it was unclear whether it was Dr. Mamdani or Stephen that made the statement about Stephen working as a roofer without physical limitations. ECF No. 6-2 at 54. Then, the ALJ ultimately found that Dr. Mamdani's assessment was "conclusory on an issue reserved to the Commissioner." *Id.* Even if the ALJ's articulations on her thoughts about Dr. Mamdani's assessment were improper, she properly recognized that the assessment constituted a statement on an issue reserved to the Commissioner and did not—as the Commissioner points out—assign any undue weight to it. To suggest that Dr. Mamdani's assessment improperly influenced the ALJ's decisions, ignores the pages of analysis the ALJ dedicated to determining the nature of Stephen's symptoms. Accordingly, the ALJ made no error when discussing Dr. Mamdani's assessment that requires remand.

### d. Whether the ALJ Failed to Identify State Agency Consultant's Erroneous Substance Abuse Analysis

Next Stephen asserts that Dr. Michele Olson, a state agency consultant, erred in conducting a drug addiction and materiality analysis when reviewing his records. ECF No. 8 at 26. He highlights Dr. Olson's note that "DAA [Drug Addiction or Alcoholism] is contributory . . . and limitations do not meet marked severity even with ongoing DAA." *Id.* Stephen outlines several issues with these findings. First, he asserts that Dr. Olson's DAA findings were premature because under SSR 13-2p an examiner may only make such findings after finding a claimant disabled—which Stephen was not found to be. *Id.* Second, he contends that Dr. Olson's findings

12

amounted to a statement on an issue reserved to the Commission because it was essentially a finding that he was not disabled. *Id.* He notes that under SSR 13-2p, if a claimant's DAA is a contributing factor that is material to the determination of disability, then they cannot be considered disabled. *Id.* Thus, Stephen argues that when Dr. Olson stated that his DAA was "contributing," it amounted to a finding of non-disability under SSR 13—2p. *Id.* Lastly, Stephen contends that Dr. Olson's disability finding was improper because it is not the type of finding that a state agency consultant is allowed to make. *Id.* at 26-27.

The relevance of Stephen's gripe with Dr. Olson's purportedly flawed findings lies in the fact that the ALJ found Dr. Olson's overall opinion persuasive. Stephen states that such a finding makes the ALJ's decision unsupportable, thus warranting remand, because it illustrated that she relied in part on legally erroneous consultant opinion. *Id.* at 27. On the other hand, the Commissioner urges that Dr. Olson did not make a finding of DAA materiality and non-disability that Stephen suggests. ECF No. 9 at 13. Rather, the Commissioner asserts that Dr. Olson's finding that Stephen's "limitations do not meet marked severity even with ongoing DAA" amounted to a finding that Stephen was not disabled despite his DAA. *Id.* at 13-14.

SSR 13-2p appears to support the Commissioner's characterization of Dr. Olson's findings. SSR 13-2p provides a six step DAA evaluation process tailored for determining whether a claimant's DAA is material to the disability determination. SSR 13-2p, 2013 WL 621536, at *5 (Feb. 20, 2013). Relevantly, Step 2 asks whether the claimant is disabled considering all impairments, including DAA. *Id.* If the

13

answer is "no" then the evaluator is instructed not to even determine DAA materiality. *Id.* Here, Dr. Olson did not make a determination on Stephen's DAA materiality because, upon reaching Step 2 of DAA Evaluation Process, she essentially concluded that Stephen was not disabled "even with his ongoing DAA." *See* ECF 6-3 at 121. Accordingly, remand is not required on this issue because the ALJ could not have relied on any erroneous DAA materiality finding upon reaching her decision when no such finding was made.

### C. Whether the ALJ Properly Determined that Stephen's Statements Were Not Entirely Consistent with The Record

Stephen contends that the ALJ erred in not properly determining whether his statements about his pain and other symptoms were consistent with the record. ECF No. 8 at 28. In his first point, Stephen argues that the ALJ cannot reconcile her finding that Stephen's statements were not entirely consistent with the medical record with her finding that Dr. Olson's opinion persuasive because that opinion contained a finding that Stephen's "current allegations are consistent with and substantiated by objective medical evidence." *Id.* But as the Commissioner points out, Stephen takes this quote out of context. Dr. Olson's findings were specifically about Stephen's "current allegation [of] anxiety and depression" being consistent with the medical record—not a broad declaration that *all* allegations about his various impairments were consistent with the evidence on record. ECF 6-3 at 121. Further, the ALJ did not contradict Dr. Olson's findings because she also found that Stephen suffered from anxiety and depression. *See* ECF No. 6-2 at 48. Thus, it is unclear how

14

the ALJ assumed inconsistent stances when she and Dr. Olson made uniform findings on the existence of Stephen's anxiety and depression.

In his second point, Stephen argues that the ALJ provided no explanation to support her conclusion that his subjective statements about pain and other symptoms were inconsistent with the record. ECF No. 8 at 29. He challenges the ALJ using his past reports of "mov[ing] a heavy boiler and play[ing] in the pool," to undermine his statements of pain and other symptoms. *Id.* Stephen asserts that he engaged in those activities only after he received an injection that alleviated his back pain, and those activities caused more pain—requiring him to receive two additional injections. *Id.* at 30. The Commissioner contends that the ALJ did not use Stephen's statements to conclude that he had a greater RFC to move a heavy boiler because she ultimately concluded that Stephen was limited to lifting and carrying only up to 20 pounds occasionally. ECF No. 9 at 15-16.

Stephen also objects to the ALJ reciting his statements from his function report, in which Stephen stated that "he has no physical limitations in person care, watches television, spends time with others in person and texting [sic]." ECF No. 8 at 30. Stephen states that this recitation omits crucial facts including his reports that, though he spends time with others, he had issues getting along with them. *Id.* at 30-31. Additionally, Stephen highlights that the ALJ has no evidence to establish that Stephen had no physical limitations in his personal care—suggesting that his past reports of procrastinating with showering and toileting illustrate that he avoided those activities because of pain. *Id.* at 31. The Commissioner argues that Stephen

15

explicitly testified that he did not shower every day because of depression and is only now alleging in his brief that his shower avoidance was due to his pain. ECF No. 9 at 16.

A review of the ALJ's decision reveals that she did not rely heavily on her assessment of Stephen's ability to perform daily activities when she was determining Stephen's RCF and whether his statements of subjective symptoms were consistent with the record. The relevant analysis runs about five pages long and summarizes the treatment history for each of Stephen's severe impairments before explaining why the medical evidence and other evidence are inconsistent with Stephen's report on the intensity, persistence and limiting effects of his symptoms. *See* ECF 6-2 at 51-54. For example, when discussing Stephen's lumbar disorder, the ALJ noted how (1) Stephen's treatment for the condition was conservative (2) MRIs did not reveal severe findings, and (3) examination findings highlighted normal gait, range of motion, and toe and heal walk. *Id.* at 53. The ALJ's analysis on Stephen's QT syndrome, and mental and physical impairments follows the trend of pointing to the record evidence to demonstrate that Stephen's symptoms do not consistently reflect the intensity, persistence, and limitations that he alleges in his subjective statements. *See id.*

Overall, the ALJ sufficiently articulated the bases for her credibility assessment through juxtaposing Stephen's subjective statements of his symptoms with the record evidence of his symptoms. Thus, because the bases for her determination were supported by substantial evidence, they are entitled deference from this Court—"even if the record could arguably justify a different conclusion" as

16

Stephen suggests. *Rodriguez Pagan*, 819 F.2d at 3. Accordingly, Stephen has not shown a reversible error on the ALJ's assessment of his subjective statements.

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Stephen's Motion to Reverse relating to the seizure disorder issue but DENIES the Motion to Reverse on all other issues. ECF No. 8. Accordingly, the Court DENIES the Commissioner's Motion to Affirm. ECF No. 9. The Court remands this case to the Commissioner for further action consistent with this Order.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge

October 22, 2024